UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Granger Plastics Company, | : |
| Plaintiff, | : Case No. 1:17-cv-00314 |
| vs. | : Judge Michael R. Barrett |
| Bluewater ATU LLC, | : |
| Defendants. | : |

### ORDER AND OPINION

The matter is before the Court on the Motion for Judgment on the Pleadings filed by Defendants Bluewater ATU LLC, Robert Collins, Deborah Collins, and Douglas Cockburn. (Doc. 39). This matter is also before the Court on Defendants' Motion to Strike Plaintiff's Sur-Response. (Doc. 49).

As an initial matter, the Court will grant Defendants' Motion to Strike. Plaintiff Granger Plastics Company fails to establish that Defendants introduced new arguments in their Reply that necessitates an additional response, show good cause to permit the filing, or explain why this is an appropriate circumstance for the Court to use its discretion to allow a sur-response. *See United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 276-77 (D.D.C. 2002) ("A surreply may be filed only by leave of Court, and only to address new matters raised in a reply to which a party would otherwise be unable to respond."); S.D. Ohio Civ. R. 7.2(a)(2) ("No additional memoranda beyond those enumerated are permitted except upon leave of court for good cause shown").

I. **BACKGROUND**[1]

   a. **The Parties**

Plaintiff is an Ohio corporation that manufactures rotational molded plastic products. (Doc. 34 ¶¶ 3, 8); *see* (Doc. 1-1) (Confidential Purchase/Manufacturing Agreement).[2]

Defendant Bluewater ATU LLC ("Bluewater ATU") is a New Mexico company that sells septic tank inserts and advanced treatment units ("ATUs")[3] designed to mitigate septic tank problems. (Doc. 34 ¶¶ 9, 14). Defendant Robert Collins is the chairman and an owner of Defendant Bluewater ATU. (*Id.* ¶ 11). Defendant Deborah Collins is an owner of Defendant Bluewater ATU. (*Id.* ¶ 12). Defendant Douglas Cockburn is an officer and manager of Defendant Bluewater ATU. (*Id.* ¶ 10).

   b. **Before the execution of Plaintiff's and Defendant Bluewater ATU's Confidential Purchase/Manufacturing Agreement**

As best the Court can discern,[4] starting sometime in 2013 and through November 2015, Defendants Robert Collins and Cockburn proposed a business

---

[1] The facts set forth in the Amended Complaint are taken as true for purposes of this Order. *See Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) ("For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).

[2] Although the Amended Complaint states that this agreement between the parties is attached thereto as Exhibit A, the agreement is not so attached. (Doc. 34 ¶ 15). Nevertheless, and as Defendants explain, Plaintiff had attached this agreement to its initial Complaint. (Doc. 1-1); (Doc. 39-1 PageID 581). The Court will consider this agreement, as it is referred to in the Amended Complaint and is central to Plaintiff's claims. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008); *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1032 (S.D. Ohio 2016), *aff'd*, 714 F. App'x 565 (6th Cir. 2017); *see also* FED. R. CIV. P. 10(c).

[3] ATUs are designed to utilize naturally occurring microorganisms that breakdown organic waste to result in discharge that is cleaner than many municipal treatment plants or traditional septic systems. (Doc. 35 ¶ 7). ATUs are intended to be installed underground without cement or other structural support and, thus, must be capable of withstanding significant pressure and other environmental factors. (*Id.*)

[4] The Amended Complaint is not a model pleading.

arrangement, between Plaintiff and Defendant Bluewater ATU, to Plaintiff regarding the manufacturing (by Plaintiff) and purchase (by Defendant Bluewater ATU) of plastic ATUs. Bluewater ATU's ATUs were designed and manufactured primarily from fiberglass materials. (Doc. 35 ¶ 8). In this proposed business arrangement, Plaintiff would advance the expense of making three molds for three types of plastic residential-use ATU products for Defendant Bluewater ATU and become the exclusive manufacturer for those three products; Defendant Bluewater ATU promised to purchase, collectively, 40,000 products annually from Plaintiff, and informed Plaintiff that it had the necessary financing to make such annual purchases and had the proper engineering calculations and patents to modify its fiberglass ATU design and manufacturing into plastic ATU design and manufacturing. (Doc. 34 ¶¶ 16, 31, 36, 64, 121).

    c. **November 2015**

On an unclear date in November 2015, Defendant Bluewater ATU approved all of the engineering calculations that Plaintiff was to use in manufacturing the three molds. (*Id.* ¶ 24). On November 11, 2015, Plaintiff and Defendant Bluewater ATU entered into a written "Confidential Purchase/Manufacturing Agreement" ("Agreement") under which Plaintiff agreed to manufacture and sell to Defendant Bluewater ATU, and Defendant Bluewater ATU agreed to purchase, three types of plastic molded products: the Bluewater 600 Gallon ATU; the Bluewater 900 Gallon ATU; and the Bluewater Turbo. (Doc. 1-1).

The Agreement's "Exclusive Manufacturer" section states that "Granger is hereby granted the right and shall become the exclusive manufacturer and seller of the Product to Bluewater ATU." (*Id.* § 3). The Agreement's "Payment Terms" section reads:

> Subject to the provisions of this Agreement, Bluewater ATU agrees to make payments to Granger, for all purchases ordered hereunder. Terms:

3

> Bluewater ATU shall submit **one hundred (100%) percent** of the list price for product before delivery of the goods.

(*Id.* § 4) (emphasis in original). The Agreement's "Tooling" section provides that

> During the term of this Agreement, Granger agrees that the mold for Bluewater ATU's exclusive container cannot be used to produce products for sale to any other Granger customer(s). The maintenance of the tooling is included in the per part price paid by Bluewater ATU for as long as the tool is controlled by Granger.
>
> . . .
>
> Granger shall be responsible for procuring such tooling as will be necessary to produce all Bluewater ATU that are rotationally molded including the assembly and packaging. Said cost of tooling shall be advanced by Granger in exchange for exclusive manufacturing rights of all product to manufactured by Bluewater ATU that relate to rotationally mold parts during the term of this agreement and will add a surcharge on the sale of each part to a consumer of One Hundred ($100) Dollars as a fee for tooling to be paid to Granger. The ownership of the tooling shall remain with Granger, but may not be used for any other customer unless Bluewater ATU is found to have breached the Agreement. . . .

(*Id.* §§ 6, 6.1).

> The Agreement's "Inventory" section states that
>
> Granger may at its option stock an inventory in amount approved by Bluewater ATU at its facility, to be invoiced when shipped per Bluewater ATU's Purchase Orders. Granger will provide Bluewater ATU, a report of the approved amount of stock it is holding for BLUEWATER ATU with each monthly statement of account.

(*Id.* § 7). The Agreement's "Indemnification" section provides that

> Bluewater ATU agrees to indemnify, defend and hold Granger harmless from and against any claims related to injury arising from the design or the intended use of the product being manufactured by Granger for or on behalf of Bluewater ATU so long as the product is manufactured in accordance with actual design and/or specifications required by Bluewater ATU.

(*Id.* §15). That same section also states that, during the term of the Agreement's existence, Defendant Bluewater ATU would provide Plaintiff with a Certificate of Liability

4

Insurance designating Plaintiff as an additional named insured. (*Id.* §15).

The Agreement's "Disclaimer" section provides that

The rotationally-molded ATU system is manufactured in accordance with plans supplied or approved by Bluewater ATU. Granger makes no warranty that the rotationally-molded ATU system is merchantable or fit for any particular purpose or use. The sole responsibility of Granger shall be that it will manufacture the rotationally-molded ATU system in accordance with the plans of Bluewater ATU and that the rotationally-molded ATU system will be free from defects in material and workmanship. This warranty is expressly made in lieu of any and all warranties and the sole liability of Granger shall be to replace any rotationally-molded ATU system not in conformity with the plans.

(*Id.* § 17) (emphasis omitted).[5] Plaintiff's president signed the Agreement for Plaintiff and Defendant Robert Collins, as chairman and owner, signed it for Defendant Bluewater ATU. (*Id.* PageID 31).

### d. **After the execution of the Confidential Purchase/Manufacturing Agreement**

In early December 2015, Defendant Bluewater ATU demanded engineering calculation revisions that delayed manufacturing of the three molds through January 2016. (*Id.* ¶ 25). Beginning in February 2016 and through August 2016, Plaintiff used the engineering calculations provided by Defendant Bluewater ATU and constructed the three molds and also manufactured plastic ATUs. (Doc. 34 ¶¶ 17, 24, 29-30). "After the production of the molds was completed in August 2016, [Defendant Bluewater ATU] requested that inventory,[6] which was produced . . ." (*Id.* ¶ 30); *see* (Doc. 35 ¶ 20)

---

[5] The Agreement also includes a forum selection clause that provides that "the sole jurisdiction for resolution of disputes will be the judicial system of State of Delaware." (*Id.* § 21). Neither party challenges venue. Assuming without deciding that the forum selection clause is permissive and not mandatory, an argument that neither party makes or disputes, the Court finds that the parties have waived the Agreement's venue provision. *Cf. C&S Outdoor Power Equip., Inc. v. Odes Indus. LLC*, No. 119CV01029STAJAY, 2019 WL 4197608, at *3 (W.D. Tenn. Sept. 4, 2019).

[6] The amount of inventory manufactured is unclear at this juncture.

("Granger manufactured polyethylene ATUs . . .").

In September 2016, and without notice to Plaintiff, Defendant Bluewater ATU shipped media[7] for ATU units to Plaintiff that occupies approximately 4,000 square feet of space at Plaintiff's plant and costs approximately $30,000 per month in lost sales and production space. (Doc. 34 ¶¶ 33, 60); see (Doc. 35 ¶ 33) ("Defendants admit that Bluewater [ATU] shipped some media to Granger . . . "). "Included in ATU needed media was materials Bluewater [ATU] purchased for business dealings outside the Agreement." (Doc. 34 ¶ 33). Plaintiff has been storing this media. (Id.)

Between March 2016 and September 2016, when Plaintiff submitted invoices for the manufactured product, Defendant Bluewater ATU did not pay. (Id. ¶¶ 20, 34). Additionally, Defendant Bluewater ATU has not submitted the purchase orders to fulfill its promised annual production. (Id. ¶ 28). Instead, in November 2016, Defendant Bluewater ATU informed Plaintiff that it would not pay the invoices, and presumably would not place any future purchase orders, because Plaintiff did not use the proper engineering calculations and the manufactured ATUs were commercially unfit. (Id. ¶ 23). Specifically, Defendant Bluewater ATU stated that it had no contractual obligation to pay Plaintiff, as Plaintiff did not conform to Defendant Bluewater ATU's request for industry-approved plans and the manufactured molds and product did not meet the relevant state and federal standards applicable to such ATUs. (Id. ¶ 46).

As a result of the above, Plaintiff alleges that Defendants formed a conspiracy to defraud Plaintiff wherein, before entering the Agreement, Defendants proposed a business plan and provided Plaintiff with engineering drawings, calculations, and patents

---

[7] It is not clear what this media consists of.

that Defendants claimed ownership of when, in reality, the information was patented and owned by a different septic tank company, and Defendants mislead Plaintiff about Defendants' financing resources and abilities to place orders under the Agreement. (*Id.* ¶¶ 35-37). Plaintiff alleges "that Defendants have participated in economic espionage and theft of trade secrets from others to benefit their scheme to take advantage of Environmental Protection Agency dictates for the treatment of wastewater sewage." (*Id.* ¶ 35). Plaintiff alleges that Defendants engaged in a similar scheme to defraud two other companies: Glade Holdings Ltd. And Biodigester Ltd. (*Id.* ¶ 39). Plaintiff alleges that Defendants' scheme "was such that[,] by not providing the proper product plans and documents supporting the development of units necessary to carry out the business plan, Defendants made it impossible for Granger to succeed in the business plan" and such that Defendants would not have to pay Plaintiff. (*Id.* ¶¶ 45-46).

The Amended Complaint includes claims for conversion, fraud and misrepresentation, money owned on account, unjust enrichment, breach of contract, and violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). (Doc. 34).

II. <u>**ANALYSIS**</u>

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial—[.]" The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). To withstand a Rule 12(b)(6) motion, a complaint must contain "more than labels and conclusions [or] a formulaic recitation of

7

the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### a. **Breach of Contract**[8]

In Ohio,[9] to establish a breach of contract claim, a plaintiff must show: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff. *Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002) (citing *Doner v. Snapp*, 98 Ohio App.3d 597, 649 N.E.2d 42, 44 (1994)). Defendant Bluewater ATU argues that Plaintiff fails to allege facts sufficient to establish performance by Plaintiff or breach by Defendant Bluewater ATU. (Doc. 39-1 PageID 596-97). In particular, Defendant Bluewater ATU argues that, "[a]s part of the Agreement, Granger promised to design, manufacture, and store inventory for new polyethylene wastewater treatment units in anticipation of potential future sales to Bluewater customers," and "[w]ithout a functioning product, there was nothing for Bluewater to sell and no payment obligations were triggered." (*Id.*).

Plaintiff brings its breach of contract claim against Defendant Bluewater ATU. (Doc. 34 ¶¶ 90-96); (Doc. 43 PageID 739). And while the Amended Complaint is not the

---

[8] For ease of organization, the Court takes Plaintiff's claims out of the order found in the Amended Complaint.

[9] The Agreement provides that it shall be construed and interpreted in accordance with Ohio law. (Doc. 1-1 § 21). The parties, and Court, agree that Ohio law controls.

model pleading, the Court concludes that its allegations for a breach of contract claim against Defendant Bluewater ATU regarding the Agreement suffice. Plaintiff alleges that the Agreement entered into by Plaintiff and Defendant Bluewater ATU is valid; Plaintiff performed thereunder by manufacturing the three molds and requested inventory per Defendants' provided engineering calculations; Defendant Bluewater ATU breached the Agreement by failing to pay the existing invoices and produce evidence of liability insurance; and Plaintiff suffered more than $1,700,000.00 in damages. (Doc. 34 ¶¶ 15, 19, 24, 30, 90-96).

To the extent that Defendant Bluewater ATU argues that Plaintiff fails to allege that it "designed a functioning ATU capable of treating residential wastewater," (Doc. 39-1 PageID 596), and viewing the facts in the light most favorable to Plaintiff, as the Court must at this juncture, it is not clear that Plaintiff agreed to design the molds, versus agreed to manufacture the molds per Defendant Bluewater ATU's design plans. The Agreement's "Indemnification" section suggests that Defendant Bluewater ATU provided the molds' "design and/or specifications" and the Agreement's "Disclaimer" section states that Plaintiff manufactured the three molds "in accordance with plans supplied or approved by Bluewater ATU" and "Granger makes no warranty that the rotationally-molded ATU system is merchantable or fit for any particular purpose or use." (Doc. 1-1 §§ 15, 17).

Likewise, and viewing the facts in the light most favorable to Plaintiff, to the extent that Defendant Bluewater ATU argues that, under the Agreement, Plaintiff promised to store inventory, the Agreement's "Inventory" section provides that Plaintiff, "may *at its option* stock an inventory in an amount approved by Bluewater ATU at its facility, to be invoiced when shipped per Bluewater ATU's Purchase Orders." (*Id.* § 7) (emphasis

added). Plaintiff's filing of this lawsuit suggests that Plaintiff did not opt to store the inventory it alleges Defendant Bluewater ATU should have purchased from Plaintiff under the Agreement. In short, a review of the allegations in the Amended Complaint establish a plausible breach of contract claim against Defendant Bluewater ATU regarding its alleged failure to pay the invoices and procure liability insurance and resulting damages to Plaintiff.

    b. **Fraud and Misrepresentation**

In Ohio, "[t]he elements of fraudulent misrepresentation[10] are: 1) a representation or concealment in the face of a duty to disclose; 2) the statement or omission is material to the transaction at hand; 3) the statement is knowingly or recklessly false; 4) the defendant intends for the statement or omission to mislead the other party into relying on it; 5) the other party justifiably did rely on the statement or omission; 6) such reliance proximately cause injury." *Wuliger v. Cannella Response Television, Inc.*, 865 F. Supp. 2d 836, 844 (N.D. Ohio 2011).

A claim for fraud must also meet the heightened particularity requirements of Federal Rule of Civil Procedure 9(b) which provides that, "[i[n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This includes alleging the time, place, and content of the fraudulent acts, the existence of a fraudulent scheme, the intent of the participants in the scheme, and the injury resulting from the fraud. *Mitri v. Rahma*, No. 4:18-CV-2258, 2019 WL 6771153, at *3 (N.D. Ohio Dec. 12, 2019). "While these particularity requirements must be considered, the ultimate

---

[10] Ohio courts refer to the same test as both fraud and fraudulent misrepresentation, and the Court will incorporate both lines of cases into its analysis. *Wuliger v. Cannella Response Television, Inc.*, 865 F. Supp. 2d 836, 844 n.2 (N.D. Ohio 2011).

question is whether the complaint puts the defendant on sufficient notice of the misrepresentation, enabling them to respond to the allegations of fraud in an informed manner." *Premier Bus. Grp., LLC v. Red Bull of N. Am., Inc.*, No. 08-CV-01453, 2009 WL 3242050, at *8 (N.D. Ohio Sept. 30, 2009) (internal quotation marks omitted).

Plaintiff brings its fraudulent misrepresentation claim against Defendants Robert Collins and Cockburn. (Doc. 34 ¶¶ 63-72); (Doc. 43 PageID 734). Plaintiff alleges that, starting sometime in 2013, and through November 2015, via mail, email, telephone, and Skype, Defendants Robert Collins and Cockburn informed Plaintiff that Defendant Bluewater ATU had the necessary financing from sources in the United Kingdom and New York for the proposed business arrangement between Plaintiff and Defendant Bluewater ATU; with that financing, Defendant Bluewater ATU could and would purchase 40,000 products annually from Plaintiff; Defendant Bluewater ATU had the proper patents, or rights to the patents, to design the modification of its fiberglass ATU design into a plastic ATU design; and Defendant Bluewater ATU had the proper rights to portions of the media that would be shipped to Plaintiff. (Doc. 34 ¶¶ 8, 31, 35-36, 64). Plaintiff further alleges that it relied on those representations when it entered into the Agreement and stored the media; Defendants Robert Collins and Cockburn made those representations with full knowledge that those representations were false or inaccurate and with the intention of misleading Plaintiff into relying on those representations to enter the Agreement and store the media; and Plaintiff has suffered damages as a result of its reliance. (Doc. 34 ¶¶ 64, 66, 70-71).

Although the allegations raised regarding the circumstances of the alleged fraudulent misrepresentation could be more complete, Defendants Robert Collins and

11

Cockburn have enough information to respond to these allegations of fraudulent misrepresentation in an informed manner. *See Premier Bus. Grp*., LLC, 2009 WL 3242050, at *8-9. The Court disagrees with Defendants' characterization of this claim as an "attempt to repackage a contract claim as fraud." (Doc. 39-1 PageID 590). Plaintiff alleges that Defendant Robert Collins's and Defendant Cockburn's purported fraudulent misrepresentations, made over multiple years, induced Plaintiff to enter into the Agreement. The Agreement's existence does not foreclose this claim, and the Amended Complaint alleges fraud with sufficient particularity. *See Mitri*, 2019 WL 6771153, at *4-5.

    c. **<u>Unjust Enrichment</u>**

In Ohio, "[a] claim for unjust enrichment requires the claimant to show that a benefit was conferred upon another party, that the other party knew of the benefit, and that it would be unjust to allow the other party to retain the benefit without paying for it." *Wuliger*, 865 F. Supp. 2d at 845. "Ohio law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject." *Tunnell Hill Reclamation, LLC v. Endurance Am., Specialty Ins. Co.*, No. 2:15-CV-2720, 2016 WL 3689100, at *6 (S.D. Ohio July 12, 2016) (quoting *Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 544 N.E.2d 920, 924 (Ohio 1989)).

Plaintiff brings its unjust enrichment claim against Defendant Bluewater ATU. (Doc. 34 ¶¶ 81-89); (Doc. 43 PageID 736, 739). The Amended Complaint alleges that Defendant Bluewater ATU purchased, and shipped to Plaintiff, massive amounts of media for the ATU units for business dealings outside the Agreement; there was no agreement between Plaintiff and Defendant Bluewater ATU to so ship or store the media; Defendant Bluewater ATU continues to benefit from the media's storage at Plaintiff's; Defendant

Bluewater ATU knew that it would benefit from this storage; Defendant Bluewater ATU has been unjustly enriched by inducing Plaintiff to store the media without compensating Plaintiff for the storage; and Defendant Bluewater ATU has been unjustly enriched in an amount greater than $28,466.86. (Doc. 34 ¶¶ 81-89).

Defendant Bluewater ATU argues that this claim must fail in light of the Agreement. (Doc. 39-1 PageID 594-96). However, viewing the facts in the light most favorable to Plaintiff, it is not clear what this shipped media consists of, *e.g.*, whether it consists of some or all of the inventory that Plaintiff manufactured, and whether Plaintiff's storage of the media falls under the terms of the Agreement. For example, if some of the media are items not manufactured under the Agreement, as the Amended Complaint alleges, and Plaintiff seeks recovery for storage fees of those items, Plaintiff's pursuit of such fees could be outside of the Agreement and not barred by its breach of contract claim. At this time, the Court holds that Plaintiff alleges sufficient facts for its unjust enrichment claim.

d. **Conversion**

In Ohio, "the elements of a conversion claim include (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *6750 BMS, L.L.C. v. Drentlau*, 2016-Ohio-1385, ¶ 28, 62 N.E.3d 928, 934. "Ohio law does not permit the repackaging of contract claims as tort actions." *Mitri*, 2019 WL 6771153, at *5 (citing *Nichols v. Chicago Title Ins. Co.*, 107 Ohio App. 3d 684, 696, 669 N.E.2d 323, 332 (1995)).

Plaintiff brings its conversion claim against all Defendants. (Doc. 34 ¶¶ 50-62); (Doc. 43 PageID 728-32). Plaintiff alleges that, from March 2016 through February 2017,

Defendant Bluewater ATU "converted to its own use labor and materials for the manufactured custom products/parts provided by Granger;" Plaintiff "is entitled to the outstanding invoice payment from Bluewater ATU for Granger's labor and manufacturing services provided to Bluewater ATU under the Agreement;" and "[t]he labor for the manufactured custom parts along with materials has taken place and demands for the money owed have gone unanswered." (*Id.* ¶¶ 51, 53, 54). Plaintiff alleges that, "[a]s a result of the Defendants' unlawful conversion of Granger's property identified above, Granger has been damaged in the amount in excess of $75,000.00." (*Id.* ¶ 62).

Plaintiff and Defendant Bluewater ATU are parties to the Agreement, and the duties and responsibilities that Plaintiff alleges Defendants breached in this claim flow directly from the Agreement. *See Mitri*, 2019 WL 6771153, at *5. Throughout the Amended Complaint, Plaintiff alleges that it contracted with Defendant Bluewater ATU and, as part of that contract, Plaintiff was responsible for the labor and manufacturing of the three molds. *See, e.g.*, (Doc. 34 ¶ 16) ("As a part of the Agreement, Granger was to build molds for the manufacture of the parts required by Bluewater, which the expense of was to be advance by Granger which was based upon Bluewater's promises for production."). The existence of the Agreement defeat's Plaintiff's tort claim against all Defendants, and Ohio contract law governs Plaintiff's attempt to recover the funds from the outstanding invoices that derive from the Agreement. *See Mitri*, 2019 WL 6771153, at *5 (citing *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981) (recognizing that "a tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed[ ]")).

14

### e. **Money Owed on Account**

"In Ohio, a prima facie case to recover money on an account stated requires the following elements: (1) a showing that an account in the name of the charged party exists; (2) a starting balance of zero or another provable sum; (3) items listed with accompanying dates and charges; and (4) summarization of the running balance verifying the amount claimed to be owed." *Capsa Sols., LLC. v. Concord Healthcare Grp., LLC.*, No. 2:18-CV-594, 2019 WL 4894038, at *2 (S.D. Ohio Oct. 4, 2019) (citing *Citibank, NA v. Abrahamson*, 2017-Ohio-5566, ¶ 21). Ohio courts have held that " a complaint for money on an account need only allege the defendant's name and address, the amount owed, and the period of time the debt accrued." *Cap. One Bank v. Toney*, 2007-Ohio-1571, ¶ 29 (citing *C-Z Const. Co. v. Russo*, 2003-Ohio-4008, ¶ 13). Ohio also requires the plaintiff to attach a copy of the account to the operative pleading or, if the plaintiff does not so attach, explain the reason for the copy's omission in the pleading. *Id.* (citing Ohio Civ. R. 10(d)).

Plaintiff brings its money owed on an account claim against Defendant Bluewater ATU. (Doc. 34 ¶¶ 73-80); (Doc. 43 PageID 736, 739). The Amended Complaint alleges Defendant Bluewater ATU's name, Defendant Bluewater ATU's address, an amount owed of $9,680.00 per month, starting from November 2016 through the present, for storage of the shipped media, and an amount owed of $28,466.86, from September 2016 to the present, for the outstanding invoices under the Agreement. (Doc. 34 ¶¶ 73-80). However, and despite Plaintiff's allegations otherwise in the Amended Complaint and Response in Opposition, Plaintiff did not attach the accounts that show the alleged amounts to its Amended Complaint. (Doc. 34 ¶ 80) (citing Exhibits A and B); (Doc. 43 PageID 736) (referencing "Exhibits A and B invoices in the Complaint."). There was only

15

one exhibit attached to the Amended Complaint and it is an affidavit of the Director of Glade Holdings Ltd. (Doc. 34-1). To the extent that Plaintiff meant Exhibits A and B attached to the initial Complaint—which, to be sure, is no longer the operative complaint in this matter—Exhibit A to the initial Complaint is the Agreement and Exhibit B is a letter from Plaintiff's counsel to Defendant Bluewater ATU. (Docs. 1-1, 1-2). Plaintiff's failure to attach the accounts, or explain why the accounts cannot be attached, to its pleading is fatal to this claim, as Defendant Bluewater ATU does not have sufficient notice of the specific instruments on which Plaintiff's claims for money are based. *Cf. Am. Express Centurian Bank v. Banaie*, 2010-Ohio-6503, ¶¶ 20-23.

    f.  **RICO**

As a general matter, "[a] RICO claim 'is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'" *Bobb v. Swartz-Retson P.C.*, No. 17-CV-7694, 2018 WL 4384292, at *6 (N.D. Ill. Sept. 14, 2018) (quoting *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)). More specifically, "RICO provides a private cause of action for '[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. §] 1962.'" *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 6 (2010) (quoting 18 U.S.C. § 1964(c)). Section 1962 of RICO, in turn, contains four provisions, and those provisions prohibit: using or investing income received from a racketeering activity or unlawful debt collecting; acquiring or maintaining an interest in or control of an enterprise engaged in or affecting interstate or foreign commerce through a pattern of racketeering; conducting or participating in an enterprise's affairs through a pattern of racketeering activity or unlawful debt collecting; or conspiring to commit any of the three above offenses. 18 U.S.C. § 1962(a)-(d).

16

The Amended Complaint invokes all four RICO provisions and Plaintiff brings its RICO claims against all Defendants. (Doc. 34 ¶¶ 97-117, 118-130). Defendants argue that Plaintiff fails to state a claim under any RICO provision, as Plaintiff has not alleged sufficient facts to establish the existence of predicate acts of racketeering activity. (Doc. 39-1 PageID 601-03).

Although there are significant substantive differences among the four RICO provisions, the existence of a predicate act is fundamental to each provision. *Arnold v. Alphatec Spine, Inc.*, No. 1:13-CV-714, 2014 WL 2896838, at *9 (S.D. Ohio June 26, 2014). Moreover, although the allegations of mail fraud, wire fraud and bank fraud, are among the enumerated racketeering activities in 18 U.S.C. § 1961(1), they are subject to the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure. *Holland v. Cerberus Cap. Mgmt.*, No. 2:13-CV-00491, 2014 WL 6473479, at *6 (N.D. Ind. Nov. 18, 2014), *aff'd* (Mar. 9, 2015), *aff'd* (Apr. 20, 2015).

To satisfy that particularity standard with respect to mail and wire fraud, "a RICO plaintiff must allege the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.* (citation omitted) (internal quotation marks omitted); *accord Penn, LLC v. Prosper Bus. Dev. Corp.*, No. 2:10-CV-993, 2011 WL 2118072, at *11 (S.D. Ohio May 27, 2011) ("Indeed, '[c]ourts have been particularly sensitive to Fed. R. Civ. P[.] 9(b)'s pleading requirements in RICO cases in which the "predicate acts" are mail fraud and wire fraud, and have further required specific allegations as to which defendant caused what to be mailed (or made which telephone calls), and when and how each mailing (or telephone call) furthered the fraudulent

17

scheme.'" (quoting *Berent v. Kemper Corp.*, 780 F. Supp. 431, 448 (E.D. Mich. 1991), *aff'd*, 973 F.2d 1291 (6th Cir. 1992))). Plaintiff "must make specific allegations as to which defendant made which telephone calls or mailings, and how each call or mailing furthered the fraudulent scheme." *Penn, LLC*, 2011 WL 2118072, at *11.

Although the Amended Complaint alleges that the predicate acts are mail fraud and wire fraud, (Doc. 34 ¶ 103), it provides no specificity as to what each defendant is allegedly responsible for transmitting by mail or wire, what was actually mailed or sent by wire, when the mailings or wire transmissions were allegedly made, or how each mailing or wire furthered the fraudulent scheme, *see* (Doc. 34). Instead, Plaintiff's "allegations have lumped all Defendants together for the purpose of alleging liability which is directly opposed to what is required to successfully plead a RICO claim." *Smith v. Liberty Mortg. Co., Inc.*, No. 2:19-CV-3547, 2020 WL 2494459, at *10 (S.D. Ohio May 13, 2020). The Court agrees with Defendants that Plaintiff's RICO claims cannot withstand dismissal as the Amended Complaint fails to identify the who, what, when, were, or how necessary to plead a predicate act. (Doc. 39-1 PageID 603).

III. **CONCLUSION**

Based on the foregoing, it is hereby **ORDERED** that Defendants' Motion for Judgment on the Pleadings (Doc. 39) is **GRANTED in part and DENIED in part**. The remaining claims are the breach of contract claim against Defendant Bluewater ATU; fraudulent misrepresentation claim against Defendants Robert Collins and Cockburn; and unjust enrichment claim against Defendant Bluewater ATU. It is further **ORDERED** that Defendants' Motion to Strike (Doc. 49) is hereby **GRANTED** and Plaintiff's Sur-Response (Doc. 48) shall be **STRIKEN**.

    **IT IS SO ORDERED.**

_/s Michael R. Barrett_____
Michael R. Barrett, Judge
United States District Court